UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-cv-23716-PCH

MIAMI COALITION AGAINST BREED
SPECIFIC LEGISLATION, INC., a Florida
not for profit corporation, and BLUES FOR
VETS, INC., a Florida not for profit
corporation,

          Plaintiffs,

v.

MIAMI-DADE COUNTY, FLORIDA,

          Defendant.

_____

**DEFENDANT MIAMI-DADE COUNTY'S
MOTION TO DISMISS COMPLAINT**

       Pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, Miami-Dade County ("the County") moves to dismiss Plaintiffs' Complaint (D.E. 1) for lack of subject matter jurisdiction and for failure to state a case of action. The Complaint seeks declaratory and injunctive relief under 42 U.S.C. § 1983, alleging that Miami-Dade County Ordinance No. 89-22, codified as §§ 5-17–5-17.6 of the Miami-Dade County Code (the "Ordinance"), violates the substantive due process protections contained within the Fifth and Fourteenth Amendments. Plaintiffs' claims fail on procedural and substantive grounds.

       The Ordinance at issue in this case outlawed the sale, purchase, or keeping of pit bull dogs in Miami-Dade County after July 13, 1989. *See* Ex. 1 (Ordinance No. 89-22). First, Plaintiff Blues for Vets, Inc. ("BFV") has no standing to bring these claims. The County has a policy of exempting service dogs from the Ordinance. Accordingly, BFV's members, who utilize pit bulls as service animals, will not face enforcement under the Ordinance, and BFV

therefore cannot establish an injury-in-fact. Second, Plaintiffs are time-barred from bringing this action. The Ordinance has been in place and materially unchanged for almost 30 years, so the time for bringing a facial challenge has long since passed.

Finally, even if Plaintiffs could overcome these significant procedural bars, their constitutional claims fail on the merits. Plaintiffs improperly ask this Court to second-guess the wisdom of the legislature, based solely on the opinions of two dog registry clubs that pit bulls are friendly and non-aggressive. That Plaintiffs find the current opinions of these clubs to be persuasive is not a valid basis on which to attack a decades-old law. Plaintiffs bear the insurmountable burden of establishing that the Ordinance has no conceivable rational basis. Even if the clubs' opinions alone could constitute the "present state of the science" regarding pit bull dogs, D.E. 1 ¶¶ 20-23 – an absurd claim in itself – those opinions would not change the constitutionality of the Ordinance. The Ordinance is supported by easily conceivable rational bases, some of which were enumerated within the Ordinance itself. This case represents nothing more than legislation by litigation. As explained further below, the Complaint must be dismissed with prejudice.

## I.      FACTUAL BACKGROUND

In April 1989, after a series of pit bull attacks in Miami-Dade County that culminated in a pit bull horrifically attacking and almost killing an 8-year-old girl, the County Commission enacted Ordinance No. 89-22. *See* Ex. 1 at 2; *Dade's Pit Bull Ban Supporters Keep An Eye On House Actions*, CBS Miami (Mar. 1, 2012), http://miami.cbslocal.com/2012/03/01/supporters-of-dades-pit-bull-ban-keep-an-on-house-actions/. The Ordinance defines a pit bull dog as a dog that "substantially conform[s]" to one of the following breeds: the American Staffordshire Terrier; the Staffordshire Bull Terrier; or the American Pit Bull Terrier. Ex. 1 at 3 (§ 5-17.1(a).)

The Ordinance referred to the breeds based on the standards established by the American Kennel Club ("AKC") and the United Kennel Club ("UKC"), respectively, but the Ordinance specifically adopted standards to identify the dogs that are subject to the prohibition. *Id.* (referring to the standards "attached hereto and incorporated herein by reference as 'Exhibit A'"); *id.* at Ex. A. The Ordinance prohibits the sale, purchase, acquisition, keeping, or harboring of those defined pit bull dogs in Miami-Dade County. *Id.* at 5-6 (§ 5-17.6)

In its preamble, which the County Commission adopted by reference, Ex. 1 at 3 (Section 1), the Ordinance made the following findings as to the dangers of pit bull dogs:

> [I]n recent months Dade County has experienced a tragic series of incidents in which citizens have been attacked and seriously injured by pit bull dogs; and . . .
>
> concurrent with these attacks upon human beings, the community has also experienced an increasing number of animal killings resulting from pit bull attacks; and . . .
>
> pit bull breeds were developed for the purpose of fighting dogs and other animals; and . . .
>
> to increase its effectiveness as a fighter, certain pit bull traits have been selected and maximized by controlled breeding, including 1) a set of powerful jaws with an exceptional ability to grip, lock and tear when the dog bites; 2) a unique insensitivity to pain that causes pit bulls to be exceedingly tenacious in the attack; 3) an unusually aggressive temperament toward human beings and animals; and 4) an extraordinary directness in their method of attack that does not include the common warning signs such as barking or growling displayed by other breeds; . . .
>
> for the above reasons, pit bull dogs present a danger to the health and welfare of the citizens of Dade County, different in degree and king, from the dangers presented by other breeds of dog.

*Id.* at 2.

Shortly after enactment, a dog ownership association launched a pre-enforcement constitutional challenge against the Ordinance in *American Dog Owners Ass'n, Inc. v. Dade County, Fla.*, 728 F. Supp. 1533 (S.D. Fla. 1989). The plaintiffs in that case alleged that the

ban violated due process, in that the definition of pit bull in the Ordinance was too vague. *Id*. at 1534. Ultimately, this Court found that the Ordinance satisfied the requirements of due process and thus upheld the Ordinance as constitutional. *Id* at 1541-1542. The Ordinance has remained in force, and materially unchanged, since 1989.[1]

The County has a policy of exempting service animals, as defined in 28 C.F.R. § 36.104, from the Ordinance. Indeed, since 2007, numerous pit bull dogs have been registered as service dogs with the County's Animal Services Department, which requires all dogs to be licensed and registered. Furthermore, the Department has developed a process for recognizing service dogs when it responds to complaints from members of the public seeking enforcement against pit bull dogs. The County has previously attested to these policies and procedures in a case before this Court involving pit bulls, *Conde v. Miami-Dade County*, Case No. 13-cv-24111-JAL, D.E. 11 at 4-5 (Def. Miami-Dade County's Answer and Defenses) and D.E. 11-5 (Gallagher Decl.) (S.D. Fla. Dec. 20, 2013). *See* Ex. 2 (Gallagher Decl.).

## III.    LEGAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(6) should be granted where a complaint fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

---

[1]  Later in 1989, the County amended the insurance requirements applicable to pit bulls that had been acquired prior to the Ordinance. *See* §§ 5-17.3 and 5-17.6, available online at: https://library.municode.com/fl/miami_-_dade_county/codes/code_of_ordinances?nodeId=PTIIICOOR_CH5ANFO_S5-17.3EVFIREREBEMAOWPIBUDO. And in 1999, Section 5-17.7 was added, to require veterinary offices, kennels, and other animal business establishments to post notices of the pit bull prohibition. *See* https://library.municode.com/fl/miami_-_dade_county/codes/code_of_ordinances?nodeId=PTIIICOOR_CH5ANFO_S5-17.7PIBUSIVEOFKECOBRCOANESPESHDOGRBU.
None of these amendments is material to the issues in this case.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is required to take all factual allegations in the complaint as true, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (finding that an allegation of a minimally adequate education, without pleading facts to support such a conclusion, was insufficient to survive a motion to dismiss). "The purpose of a motion to dismiss under Rule 12(b)(6) is to allow the Court to eliminate actions that are fatally flawed in their legal premise and are destined to fail, and thus spare litigants the burdens of unnecessary pretrial and trial activities." *Ackerman v. Moreland*, 8:11-CV-1980-T-17TBM, 2012 WL 1059798, at 4 (M.D. Fla. Mar. 28, 2012) (citing to *Advanced Cardiovascular Sys., Inc., v. Scimed Life Sys., Inc.*, 988 F. 2d 1157 (8th Cir. 1993)). Where a plaintiff's due process claims "lack any plausible foundation, they are subject to dismissal." *SP Frederica, LLC v. Glynn County*, 173 F. Supp. 3d 1362, 1380–81 (S.D. Ga. 2016).

## IV.   ARGUMENT

### A.   Plaintiff BFV Cannot Allege an Injury in Fact and thus Lacks Standing.

BFV alleges that it provides disabled veterans with service animals and that most of those service animals would be considered "pit bulls" under the Ordinance. D.E. 1 ¶¶ 10-11. But the County in fact has a policy of not enforcing the Ordinance against service animals. *See* Ex. 2. BFV does not provide any factual allegations supporting its purely conclusory allegation that the County has a "policy of forcing Plaintiffs' members to surrender their companion and/or service animals," D.E. 1 ¶ 26. Because BFV's members do not suffer an actual or imminent threat to a legally protected interest, BFV lacks standing to bring these claims.

As this Court has noted, relying on longstanding U.S. Supreme Court precedent, "[s]tanding is the threshold question in every federal case," and "[i]n the absence of standing,

a court is not free to opine in an advisory capacity about the merits of a plaintiff's [arguments]."
*See In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1038 (11th Cir. 2015) (citations and internal quotations omitted). The party invoking federal jurisdiction bears the burden of establishing the three elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest." *Id*. at 560. That interest must be "concrete and particularized" and "actual or imminent." *Id*. It cannot be "conjectural" or "hypothetical." *Id*. An association wishing to establish standing to bring suit on behalf of its members can only do so successfully "when its members would have standing to sue in their own right." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 169 (2000).

A motion to dismiss based on standing is a form of attack on the Court's subject-matter jurisdiction and, as such, can rely on materials extrinsic from the pleadings. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008); *MSP Recovery, LLC v. Allstate Ins. Co.*, 15-20732-CIV, 2017 WL 1507721, at *5 (S.D. Fla. Apr. 20, 2017) (granting motion to dismiss for lack of standing based on extrinsic materials).

Where a law has yet to be enforced against a plaintiff, the plaintiff must "show an actual and well-founded fear that the law will be enforced against [him]." *United States v. Sanders*, 731 F. Supp. 2d 1261, 1266 (M.D. Fla. 2010) (citing to *Virginia v. Am. Booksellers Ass'n,* 484 U.S. 383, 393 (1988)); *see also Cook v. Bennett*, 792 F.3d 1294, 1299 (11th Cir. 2015); *Dias v. City & County of Denver*, 567 F.3d 1169, 1176–77 (10th Cir. 2009) (dismissing challenge to pit bull ordinance where there was no allegation of "a credible threat of future prosecution").

Because the County in fact exempts service dogs from the Ordinance, *see* Ex. 2, BFV cannot show that its members face any actual and well-founded fear that the law will be

enforced against them. Without that credible threat of future prosecution or enforcement, BFV cannot establish that any of its members will suffer an "injury-in-fact" as a result of the Ordinance. BFV therefore lacks standing in this matter, and its claims must be dismissed.

B.   Plaintiffs' Action is Time-Barred

Plaintiffs' claim is a facial challenge to the Ordinance, as it "seeks to invalidate a statute or regulation itself." *Doe v. Florida Bar*, 630 F.3d 1336, 1341–42 (11th Cir. 2011). A facial challenge to the almost-30-year-old Ordinance is barred by the applicable statute of limitations. A § 1983 claim is "governed by the forum state's residual personal injury statute of limitations." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 (11th Cir. 1999). Under Florida law, the statute of limitations for declaratory actions and alleged constitutional violations is four years. Fla. Stat. § 95.11(3)(p); *see also Burton*, 178 F.3d at 1188 ("[A] plaintiff must commence a § 1983 claim arising in Florida within four years of the allegedly unconstitutional or otherwise illegal act.") *Id.*

The statute of limitations period for a claim "runs from the time the cause of action accrues." Fla. Stat. § 95.031. A cause of action under § 1983 accrues when "the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).

The statute of limitations for a facial challenge to a regulation accrues at the time of enactment. *See Hillcrest Prop., LLC v. Pasco County*, 754 F.3d 1279, 1283 (11th Cir. 2014) (facial substantive due process claim challenging land-use law accrued when the Ordinance was enacted); *Dibbs v. Hillsborough County*, Fla., 67 F. Supp. 3d 1340, 1348 (M.D. Fla. 2014) (ruling that a cause of action for § 1983 challenge to a zoning law accrued when the legislation was enacted), *aff'd*, 625 Fed. Appx. 515 (11th Cir. 2015); *Florida Keys Citizens Coal. Inc. v.*

*West*, 996 F. Supp. 1254, 1256 (S.D. Fla. 1998). The reason for this rule is that the "grounds for such challenges will usually be apparent to any interested citizen" within the applicable statute of limitations following enactment, and the "government's interest in finality outweighs a late-comer's desire to protest the agency's action as a matter of policy or procedure." *Florida Keys Citizens Coal.*, 996 F. Supp. at 1256. That is exactly the situation here.

The Ordinance was enacted in 1989. The appropriate time to challenge the Ordinance would have been within four years of its enactment. A timely challenge was in fact brought, and rejected, within the limitations period. *See Am. Dog Owners Ass'n*, 728 F. Supp. 1533. But the limitations period has now long since expired.

Plaintiffs attempt to resurrect their patently stale claim by pointing to the AKC and UKC changing their breed descriptions to characterize pit bull dogs as non-aggressive.[2] D.E. 1 ¶¶ 20-23. First, those changes – which relate to private standards maintained by third parties and not to a regulation adopted by the government – are irrelevant to the limitations period to facially attack the regulation. The Ordinance adopted a specific description of the dogs that are subject to the prohibition based on the AKC and UKC standards in existence at the time, but the Ordinance did not make those standards self-amending based on changes by the AKC and UKC. *See* Ex. 1 at Ex. A. Moreover, temperament was not one of the adopted standards: the Ordinance only identified subject dogs by physical standards, such as "Head and Skull," "Mouth," "Body," and "Size-Weight." *Id.* The Ordinance has thus not been amended in any material way since it was first adopted.

---

[2] Curiously, Plaintiffs refer to these acts – and only these acts – as establishing the "state of science" regarding pit bulls. But even if changes in the "state of science" could overcome the rational basis standard – which it cannot, *see infra* – Plaintiffs' Complaint presents no basis on which to accept the declarations of kennel clubs as "science."

Second, even if the kennel clubs' changes were relevant to the limitations period, this action would still be time-barred. Plaintiffs concede that the UKC standards for the Staffordshire Bull Terrier were revised in 2007, *id.* ¶ 22, placing that challenge well outside the limitations period even by Plaintiffs' more generous view. And while Plaintiffs allege that the UKC standards for American Pit Bull Terriers and AKC standards for American Staffordshire Terriers were revised in 2017, D.E. 1 ¶¶ 21-23, those descriptions have actually been in place for almost ten years, and possibly longer. In an unsuccessful 2009 federal case challenging the constitutionality of a pit bull ban based on this same argument, the court discussed these same breed descriptions. *Dias*, 567 F.3d at 1183–84. Like Plaintiffs here, the plaintiffs in that 2009 case alleged that the clubs described the dogs as "friendly" and that aggression was "uncharacteristic of the breed." *Id.* The 2009 description is virtually identical to the purported new "science" that Plaintiffs here rely on to allege that the descriptions were "revised" in 2017. D.E. ¶¶ 21-23.[3] Moreover, Plaintiffs fail to allege what revisions were made to these breed descriptions in 2017, but they could not have represented a significant change to the temperament description that the 2009 plaintiffs relied on in *Dias*. Plaintiffs' "evidence" of a "change in the science" was thus available prior to 2009 – over eight years ago. Even under their self-created standards, Plaintiffs' claims are time-barred.

A facial constitutional challenge to a well-settled, decades-old law, where the law has

---

[3] For purposes of this motion, it is sufficient for this Court to rely on the Tenth Circuit's descriptions of the AKC and UKC standards in 2009. But it would be appropriate for the Court to consider the standards themselves in any event, because the Complaint makes the AKC and UKC standards the centerpiece of its claims. In considering a motion to dismiss, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

not changed materially in the intervening years, cannot be premised on Plaintiffs' mere disagreement with the wisdom of the law. Allowing an action such as this one to proceed would make a mockery of the statute of limitations. It would permit plaintiffs to perpetually challenge duly-enacted statutes simply because an interest group had revised its opinions or materials on the subject matter, or a new article on the topic was published, or a purported expert developed an opinion that differed from that of the elected legislators. Permitting this lawsuit to proceed would open the floodgates to legislation by litigation: this Court would be inundated by interest groups, having been unsuccessful at convincing legislatures of the wisdom of their preferred policies, seeking to have the courts overturn long-standing, unchanged laws. Plaintiffs' claims are 24 years too late, and this Court should dismiss the Complaint with prejudice.

C.    Plaintiffs' Complaint Fails to State a Cause of Action for a Constitutional Violation and Should be Dismissed

Plaintiffs' Complaint alleges that the previous challenge to the constitutionality of the Ordinance, *Am. Dog Owners Ass'n, Inc.*, 728 F. Supp. at 1535, relied upon the "then-existing body of knowledge regarding pit bulls."[4] D.E. 1 ¶ 19. Furthermore, the Complaint alleges that the "state of the science" has changed since that case was decided. D.E. 1 ¶ 20. The "present state of the science," Plaintiffs allege, "is such that the breed specific prohibition enacted by Defendant is no longer rationally related to a legitimate governmental purpose." D.E. 1 ¶ 24. As its sole factual support for the alleged change in the "state of the science" regarding pit bulls, Plaintiffs allege that the UKC and AKC have "recently" changed their breed descriptions for these dogs, to describe them as "friendly" and to assert that aggression is "uncharacteristic"

───────────────

[4] It is worth noting that Plaintiffs misread both the claims and the holding of *American Dog Owners Ass'n*. In that case, the Ordinance was attacked for vagueness in its definition of a "pit bull." Ultimately, the Court found that the Ordinance adequately defined "pit bull" and thus met the requirements of due process.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

of the breeds. D.E. 1 ¶¶ 21, 22, 23. But even if true, Plaintiffs fail to state a cause of action for a constitutional violation. Indeed, the Ordinance has a rational basis as a matter of law.

     i.  *Rational Basis Standard*

   Plaintiffs imply that a long-standing regulation loses its constitutionality unless it is continually supported by a particular plaintiff's view of current science, and that this particular Ordinance must mesh with any changes to the AKC's and UKC's breed descriptions. But contrary to Plaintiffs' implications, the only test that the Ordinance must pass to be constitutional is the rational basis test. If a law "neither burdens a fundamental right nor targets a suspect class" – and the Ordinance does neither, as no such heightened protections attach to dog ownership, *see Am. Dog Owners Ass'n*, 728 F. Supp. at 1541 (citing *Nicchia v. People of State of New York*, 254 U.S. 228, 230 (1920)) – the law will be upheld "so long as it bears a rational relation to some legitimate end." *Williams v. Pryor*, 240 F.3d 944, 947–48 (11th Cir. 2001). Plaintiffs concede that rational basis is the appropriate analysis in this case. *See* D.E. 1 ¶¶ 20, 24. Further, in *American Dog Owners Ass'n*, this Court acknowledged that the Ordinance involved the exercise of the police power and that the proper level of scrutiny was rational basis review. 728 F. Supp. at 1538.

   Contrary to Plaintiffs' suggestion that the County must legislate (and apparently re-legislate) animal issues in accordance with the most current opinions of dog industry organizations, rational basis review "is a highly deferential standard that proscribes only the very outer limits of a legislature's power." *See Williams*, 240 F. 3d at 948. "The rational basis test asks (1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it." *Leib v. Hillsborough County Pub. Transp. Com'n*,

558 F.3d 1301, 1306 (11th Cir. 2009) (citing *Cash Inn of Dade, Inc. v. Metro. Dade Cnty.*, 938 F. 2d 1239, 1241 (11th Cir. 1991)). "Unless it is proven, beyond a reasonable doubt, that the classification drawn by the statute does not withstand this rational basis standard, the legislation is presumed to be constitutional and will be sustained." *United States v. Sanders*, 731 F. Supp. 2d 1261, 1271 (M.D. Fla. 2010).

A statute survives rational basis review if "there is any reasonably conceivable state of facts that could provide a rational basis for the" statute. *FCC v. Beach Commcn's, Inc.*, 508 U.S. 307, 313 (1993). A legislative action comes to the court "bearing a strong presumption of validity," and the plaintiff has the burden to negate "***every conceivable basis*** which might support it." *Id.* at 314-15 (emphasis added; citation and internal quotation marks omitted); *see also Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (the government has "no obligation to produce evidence to sustain the rationality of a statutory classification"). The rational basis test "is generally easily met." *Cash Inn*, 938 F.2d at 1241.

"[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Beach Commcn's*, 508 U.S. at 315; *see also Cash Inn*, 938 F.2d at 1242 ("[W]hether the perceived justification is drawn from a litigant's or judge's mind or from an accurate record of the proceedings is irrelevant."). This is because "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commcn's*, 508 U.S. at 315. The Constitution does not obligate a legislature "to support its conclusions with empirical data as long as the assumptions its makes are logical." *Cash Inn*, 938 F.2d at 1242. Indeed, a legislative action may prove altogether ineffective but still remain constitutional, as long as it would not be irrational for the legislative body "to conclude that the law would

accomplish the legislative objectives." *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 945 (11th Cir. 2013).

Whether the court believes that the legislature "was unwise in not choosing a means more precisely related to its primary purpose is irrelevant." *Vance v. Bradley*, 440 U.S. 93, 109 (1979). "[L]itigants may not procure invalidation of the legislation merely by tendering evidence in court that the legislature was mistaken." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981). "Even if the court is convinced that the political branch has made an improvident, ill-advised, or unnecessary decision, it must uphold the act if it bears a rational relation to a legitimate governmental purpose." *Cash Inn of Dade*, 938 F.2d at 1241. "[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends," or where the decision is illogical or unscientific. *Heller*, 509 U.S. at 321.

This Court has the power to make a finding of rationality as a matter of law, even at the pleading stage, where the challenged legislation exhibits a clear legal basis. Where the reason asserted by government, "or hypothesized by the Court . . . is rationally related to legitimate governmental interests," and a plaintiff "has failed to negate these rational bases," the action "must be dismissed." *Parrish v. Consol. City of Jacksonville*, 304CV986J32HTS, 2005 WL 1500894, at 5 (M.D. Fla. June 22, 2005); *see also Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, CIV. 09-00336 SOM, 2012 WL 6738532, at 7 (D. Haw. Dec. 31, 2012) (dismissing constitutional challenge where rational basis existed as a matter of law). Thus, a plaintiff alleging a constitutional violation must plead facts that establish that there is not "any reasonable conceivable state of facts that could provide a rational basis" for the challenged legislation. *Hettinga v. United States*, 677 F.3d 471, 479 (D.C. Cir. 2012); *see also Fields v.*

*Palmdale Sch. Dist.*, 427 F.3d 1197, 1208–09 (9th Cir. 2005), *opinion amended on denial of reh'g*, 447 F.3d 1187 (9th Cir. 2006) (ruling that dismissal of a constitutional challenge is appropriate where it is apparent from the pleadings that a legitimate governmental purpose exists); *County of Santa Cruz v. Burwell*, 584 Fed. Appx. 425 (9th Cir. 2014) (granting motion to dismiss constitutional challenge for failure to state a claim under the "highly deferential" rational basis review where challenged legislation had a clear legal basis). Plaintiffs fail to allege facts negating every conceivable basis here.

ii.     *Miami-Dade County Has the Power to Regulate Dog Ownership to Protect the Public Health, Safety, and Welfare.*

Miami-Dade County Ordinance No. 89-22 finds that "pit bull dogs present a danger to the health and welfare of the citizens of Dade County," and further finds that the Ordinance is intended "to secure for the citizens of the County the protection of their health, safety and welfare." Ex. 1 at 2-3. It has long been held that the government has a legitimate interest in protecting the health and safety of its residents by regulating animals. *See, e.g.*, *Nicchia*, 254 U.S. at 230; *Dias*, 567 F.3d at 1183; *Leibowitz v. City of Mineola, Tex.*, 660 F. Supp. 2d 775, 784 (E.D. Tex. 2009); *Am. Dog Owners Ass'n*, 728 F. Supp. at 1541. Further, "[t]he extensive power exercised by government to regulate animals has a long-standing history of passing constitutional muster." *State v. Peters*, 534 So. 2d 760, 765 (Fla. 3d DCA 1988).

iii.     *The Ordinance has a Rational Relationship to the Protection of the Public Health, Safety, and Welfare*

The Ordinance passes the rational basis test as a matter of law. Numerous plausible and reasonable bases for its enactment are enumerated within the Ordinance itself, including the number of pit bull attacks upon people and animals, the association between pit bulls and dog fighting, and the physical traits exhibited by pit bulls that make their attacks more dangerous

than other dogs. *See* Ex. 1 at 2. Further, regardless of the reasons enumerated in the Ordinance, or what changes Plaintiffs allege have occurred in the "state of science," the Ordinance has a rational basis as a matter of law. Indeed, Plaintiffs do not attack all of the bases enumerated in the Ordinance, much less "every conceivable basis," as is their burden, *Beach Commcn's*, 508 U.S. at 313.

To prevail, Plaintiffs must show that the Board of County Commissioners "could not possibly have believed" that passage of this ban would increase public safety and that the reasons for the law "could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* "The Eleventh Circuit has followed this principle even when it found the city's reasons for its regulations uncompelling." *S. Florida Taxicab Ass'n*, 2004 WL 958073 at 5; *see also Executive Town & Country Servs., Inc. v. City of Atlanta,* 789 F.2d 1523, 1528, 1530 (11th Cir.1986) (concluding that city's reasons for enacting certain regulations passed rational basis muster even though the reasons were "not very compelling"). Plaintiffs cannot do so here.

In addition to considering the allegations in the Complaint in ruling on this motion, this Court must also consider those documents incorporated into the Complaint by reference, such as the language of the Ordinance and the kennel clubs' standards, in addition to the matters of which a court may take judicial notice. *Tellabs*, 551 U.S. at 322. Federal Rule of Evidence 201 permits this Court to take judicial notice of "a fact that is not subject to reasonably dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts may take "judicial notice of matters of common knowledge," including historical facts like the country's experience of an economic depression or the past devaluation

of currency. *Ohio Bell Tel. Co. v. Pub. Utilities Comm'n of Ohio*, 301 U.S. 292, 301 (1937);

*see also Burnet v. Niagara Falls Brewing Co.*, 282 U.S. 648, 651 (1931) (taking judicial notice

of historical developments in the legislation of prohibition and the eventual ratification of the

Eighteenth Amendment); *Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*,

No. 16-21296-CIV, 2017 WL 3503371, at 7 (S.D. Fla. Aug. 15, 2017) (taking judicial notice

of information publically available from an official government website).

It is not necessary to go beyond the pleadings in this case for the Court to find that

Plaintiffs have failed to state a claim for a constitutional violation and for the Court to uphold

the Ordinance under the rational basis test. Indeed, many federal circuit court cases across the

country have taken judicial notice of the inherent dangerousness of pit bull dogs, their historical

association with dog fighting, and the physical characteristics that make pit bull attacks

deadlier than those of other dogs.[5]

In *State v. Robinson*, the Ohio Court of Appeals considered a constitutional challenge

brought as a result of a criminal conviction under a local pit bull ban. *State v. Robinson*, 541

N.E. 2d 1092, 1093 (Ohio Ct. App. 1989), *dismissed*, 43 Ohio St. 3d 702, 539 N.E.2d 164

(1989). The Court noted that "[t]he physical characteristics of pit bulls, the historic use of the

dogs as fighters, and the increasing number of unprovoked and unexplained attacks on people

has caused the pit bull to be perceived as presenting a threat of danger, warranting a legislative

response." *Id.* at 1094. In considering the constitutionality of the ban, the Court cited to the

---

[5] It is important to distinguish the concerns about pit bulls' dangerousness from the concern about their propensity for aggression. Plaintiffs' Complaint focuses almost exclusively on refuting a concern that pit bulls are inherently aggressive dogs. *See* D.E. 1 ¶¶ 21-24. But the Ordinance addressed other concerns that pit bulls had in fact exhibited and that Plaintiffs do not refute: for example, that pit bulls had in fact attacked – and continue to attack – human beings and other animals; and that pit bulls are "exceedingly tenacious" when they attack. Ex. 1 at 2.

Webster Dictionary definition[6] of bull terrier, which was described a "short-haired terrier of a breed originating in England by crossing the bulldog with terriers to develop a dog of speed, hardihood, and powerful bite for use in dog fights, dogs of this breed having great courage and strength." *Id*. at 1096. Further, the Court noted that the breed's history could be "traced to the Middle Ages in England when bull baiting was a sport and a tethered bull would be matched against a pack of dogs." *Id*. at 1096-1097. When "the English outlawed bull baiting in 1835, the pitting of one dog against another became popular" and the dogs became "known for their great strength and for their willingness to fight to the death." *Id*. at 1097. Ultimately, the Court rejected the constitutional attacks on the pit bull ban and upheld the conviction. *Id*.

Other courts have taken note that pit bull dogs are a particularly dangerous breed. In *Warboys v. Proulx*, 303 F. Supp. 2d 111, 118 (D. Conn. 2004), a Connecticut District Court determined as matter of law that a police officer's actions in shooting a pit bull dog were reasonable, in part because of the dangerous reputation of the breed. In support of its decision, the Court in *Warboys* cited to several other cases wherein courts had described the known dangerousness of pit bull dogs. *See*, *e.g.*, *United States v. Sutton*, 336 F. 3d 550, 551 (7th Cir. 2003) ("the police discussed several potential threats to officer safety – including the fact that pit bull dogs (known for their hostility to strangers) had been seen on the property"); *Altman v. City of High Point*, 330 F. 3d 194, 206 (4th Cir. 2003) ("Hot Rod was part pit bull, and pit bulls, like Rottweilers, are a dangerous breed of dog."). This Court may similarly take judicial notice of any of these well-known historical concerns regarding pit bull dogs.

---

[6] Webster's Dictionary currently defines a "pit bull" as "a muscular, short-haired, stocky dog (such as an *American pit bull terrier* or *American Staffordshire terrier*) of any of several breeds or a hybrid with one or more of these breeds that was originally developed for fighting and is noted for strength, stamina, and tenacity."

In any event, the Ordinance itself references the number of pit bull attacks upon people or animals, the association between pit bulls and dog fighting, and the physical traits exhibited by pit bulls that make their attacks more dangerous than other dogs. *See* Ex. 1 at 2. Any of these concerns would alone would support a rational basis for the pit bull ban. Indeed, the association with dog fighting single-handedly provides a rational basis. A rational basis exists if it is supported by "any reasonably conceivable state of facts." *Fresenius Med. Care Holdings*, 704 F.3d at 945. The association between pit bull dogs and dog fighting is a historical fact, which other courts have recognized. *See Robinson*, 541 N.E. 2d at 1097.

Plaintiffs' purported "state of the science" says nothing about pit bulls being used for fighting, and Plaintiffs allege no facts negating the rationality of the Ordinance to reduce dog fighting. It is rational to believe that banning pit bulls will reduce the evils of dog fighting and thereby provide a benefit to public safety. Similarly, the physical characteristics of pit bulls are well-known, including their "powerful bite", "their great strength" and their "willingness to fight to the death." *Robinson*, 541 N.E. 2d at 1096-97. The Ordinance explicitly referenced pit bulls' "exceedingly tenacious" attacks, their "powerful jaws," and their "exceptional ability to grip, lock and tear when the dog bites." Ex. 1 at 2.

Plaintiffs notably fail to allege either that pit bulls no longer attack humans and animals or that they no longer exhibit exceeding tenacity, power, and strength if they do attack. D.E. 1 ¶¶ 21-24. Plaintiffs' view of the ideal pit bull with the ideal family cannot substitute for the legislature's rational concern about how the dogs behave in less-than-ideal situations with less-than-noble owners. It was, and remains, rational for the local legislature to determine that when pit bull dogs do attack, their physical characteristics make them more dangerous than other breeds, and therefore that the breed should be banned to protect the public.

Finally, similar legislation banning or regulating pit bull dogs across the country has been universally upheld under rational-basis review. *See Singer v. City of Cincinnati*, 566 N.E.2d 190, 191 (Ohio Ct. App. 1990) (holding that Ohio pit bull ban did not violate equal protection or due process); *Am. Canine Found.*, 618 F. Supp. 2d at 1278-9 (holding that the classification of pit bulls and restricted breeds in City of Aurora's pit bull ordinance was rationally related to its undisputed legitimate interest in protecting the health and safety of its residents and thus finding no constitutional violation); *City of Toledo v. Tellings*, 871 N.E.2d 1152, 1158-9 (Ohio 2007) (holding that the state of Ohio and the city of Toledo's legislation were rationally related to the legitimate interest of protecting residents from the dangers of pit bulls and were therefore constitutional); *Am. Canine Found. v. Sun*, C-06-4713MMC, 2007 WL 878573, at 5–6 (N.D. Cal. Mar. 21, 2007) (holding that city ordinance requiring the spaying and neutering of pit bulls as a means of reducing the number of pit bulls and, consequently, the number of pit bull attacks on children had a rational basis); *Hearn v. City of Overland Park*, 772 P.2d 758, 765–66 (Kan. 1989) (holding that city ordinance banning pit bull dogs was justified due to the unique public health hazard created by the presence of pit bulls within the community); *Garcia v. Vill. of Tijeras*, 767 P.2d 355, 358 (N.M. Ct. App. 1988) (village ban on pit bull dogs was rationally related to the legitimate purpose in protecting the health and safety of village residents from the "special danger" presented by pit bull dogs); *Starkey v. Chester Tp.*, 628 F. Supp. 196, 197–98 (E.D. Pa. 1986) (denying preliminary injunction where township could reasonably determine, as it did, that pit bulls were dangerous and enact regulations accordingly); *Bess v. Bracken County Fiscal Court*, 210 S.W. 3d 177, 182 (Ky. App. 2006) (holding that pit bull ban was a legitimate exercise of the county's police power and the ordinance did not deny dog owners procedural due process); *Dog Fed'n of*

*Wisconsin, Inc. v. City of S. Milwaukee*, 504 N.W.2d 375, 381 (Wis. Ct. App. 1993) (holding that city's pit bull ordinance did not violate equal protection). *See generally* Russell G. Donaldson, "Validity and Construction of Statute, Ordinance, or Regulation Applying to Specific Dog Breeds, Such as 'Pit Bulls' or 'Bull Terriers,'" 80 A.L.R.4th 70 (2003). This long line of cases in which courts all over the country have upheld similar pit bull legislation further supports the County's position that the Ordinance has a rational basis as a matter of law and that Plaintiffs cannot establish any constitutional violation.

Plaintiffs do not even attempt to allege that the Ordinance makes the public less safe or that it has been ineffective in its public safety goal. Plaintiffs consider only the preferences of would-be pit bull owners. Plaintiffs fail to negate every conceivable rationale that supports the Ordinance. Plaintiffs cannot ask this Court to substitute their myopic view for that of the local legislature. Accordingly, even if their constitutional challenge were not time-barred and BFV had standing to bring it, their constitutional challenge fails on the merits.

## IV.    CONCLUSION

In Plaintiffs' view, the United States Constitution requires the County to reconsider its almost-30-year-old legislation because the dog show and registry community has revised its opinions about pit bull dogs. That is not the law. First, Plaintiff BFV lacks standing to bring this challenge because BFV's members thus lack a reasonable fear of enforcement. Second, Plaintiffs' challenge is time-barred. Finally, Plaintiffs' claims lack substantive merit, because the danger of pit bull dogs, arising from their well-documented history of being used as fighting dogs and the physical characteristics that make them effective killers, is a legitimate concern and satisfies rational basis review as a matter of law. Plaintiffs must seek redress with the legislature, not the courts. Plaintiffs' Complaint should be dismissed with prejudice.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

Dated: Nov. 27, 2017                    Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By: *s/ Sabrina Levin*
    Sabrina Levin
    Dennis A. Kerbel
    Assistant County Attorneys
    Florida Bar Nos. 27536 & 610429
    Assistant County Attorney
    Telephone: (305) 375-5151
    Facsimile:  (305) 375-5634
    E-mail:     levin@miamidade.gov
                dkerbel@miamidade.gov
                olga1@miamidade.gov
    Attorney for Defendants

*Miami Coalition Against Breed Specific Legislation, Inc. v.*
*Miami-Dade County,* Case No. 17-cv-23716-PCH

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 27, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties of record via CM/ECF.

*s/ Sabrina Levin*
Assistant County Attorney

## SERVICE LIST

*Miami Coalition Against Breed Specific Legislation, Inc. v. Miami-Dade County,*
CASE NO. 17-cv-23716-PCH

| | |
|---|---|
| Ryan H. Lehrer, Esq. | Sabrina Levin |
| Tripp Scott, P.A. | Dennis A. Kerbel |
| 110 SE 6th Street, 15th Floor | Assistant County Attorneys |
| Fort Lauderdale, FL 33301 | Miami-Dade County Attorney's Office |
| Telephone: (954) 525-7500 | 111 N.W. 1st Street, Suite 2810 |
| Facsimilie: (954) 761-8475 | Miami, Florida 33128 |
| E-mail: eservice@trippscott.com | Telephone: (305) 375-5151 |
| rhl@trippscott.com | Facsimile: (305) 375-5634 |
| sxc@trippscott.com | E-mail: slevin@miamidade.gov |
| *Counsel for Plaintiffs* | dkerbel@miamidade.gov |
| | olga1@miamidade.gov |
| *Served via Notice of Electronic Filing* | *Counsel for Defendants* |
| | *Served via Notice of Electronic Filing* |