UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-cv-23716-PCH

MIAMI COALITION AGAINST BREED
SPECIFIC LEGISLATION, INC., a Florida
not for profit corporation, and BLUES FOR
VETS, INC., a Florida not for profit
corporation,

                    Plaintiffs,

v.

MIAMI-DADE COUNTY, FLORIDA,

                    Defendant.

_____

## DEFENDANT MIAMI-DADE COUNTY'S
## MOTION TO DISMISS AMENDED COMPLAINT

The grisly track record of violence that pit bull dogs have committed on humans and animals alike—which continues to this day—led Defendant Miami-Dade County (the "County") to outlaw the sale, purchase, or keeping of pit bulls in the County since July 13, 1989. Plaintiffs are organizations whose opinions of pit bulls differ from the County's, but rather than pressing their grievances through the political process, Plaintiffs have come to federal court with what they mistakenly believe is a case of constitutional dimension. Their First Amended Complaint (the "Amended Complaint") (DE 11) seeks declaratory and injunctive relief under 42 U.S.C. § 1983, alleging that Miami-Dade County Ordinance No. 89-22 (the "Ordinance"), which enacted the pit-bull ban, violates substantive due process and is impermissibly vague. But the Amended Complaint is immediately subject to dismissal because (1) it is non-justiciable and (2) it fails to state a cause of action upon which relief can be granted.

As a threshold matter, the Court has no subject-matter jurisdiction over this case because Plaintiffs, who are associations purporting to proceed on behalf of their members, cannot satisfy the test for associational standing. First, the County has a policy of exempting service dogs from the Ordinance. Accordingly, the members of Plaintiff Blues for Vets, Inc. ("BFV"), who utilize pit bulls as service animals, will not face enforcement under the

Ordinance, and BFV therefore cannot show an injury-in-fact to establish standing for any of its claims. Second, both Plaintiffs have failed to plead a "realistic danger" of enforcement of the Ordinance against their members, and so they have no standing to assert their as-applied claims, which arise in a pre-enforcement context. Third, Plaintiffs' as-applied claims require their members' individualized participation in this suit; consequently, Plaintiffs do not have standing to assert these claims on behalf of their members for this reason as well.

Even if Plaintiffs had standing, their claims, whether construed as facial or as-applied, either are improperly pleaded or fail as a matter of law. In addition, Plaintiffs' facial claims are time-barred, given that the Ordinance has been in place and materially unchanged for almost 30 years. Finally, Plaintiffs ask the Court for an injunction ordering the County to repeal the Ordinance, but the Court does not have the power to direct the County's legislative activity. In light of the foregoing incurable defects, the County moves to dismiss the Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Rule 12(b)(6) with prejudice for failure to state a claim.

## BACKGROUND

In April 1989, after a series of pit-bull attacks in Miami-Dade County that culminated in a pit bull horrifically attacking and almost killing an eight-year-old girl, the County Commission enacted the Ordinance.[1] (*See* Ex. 1 at 2); *see also Dade's Pit Bull Ban Supporters Keep An Eye On House Actions*, CBS Miami (Mar. 1, 2012), http://miami.cbslocal.com/2012/03/01/supporters-of-dades-pit-bull-ban-keep-an-on-house-actions/. The Ordinance defines a "pit bull dog" as a dog that "substantially conform[s]" to one of the following breeds: the American Staffordshire Terrier; the Staffordshire Bull Terrier; or the American Pit Bull Terrier. (Ex. 1 at 3 (codified as County Code § 5-17.1(a))). To identify the dogs that are subject to the prohibition, the Ordinance specifically adopted standards based on breed identification standards established by the American Kennel Club ("AKC") and the United Kennel Club ("UKC"). (*Id.* at 3–4, 8–10 (County Code § 5-17.1(b))). The Ordinance prohibits the sale, purchase, acquisition, keeping, or harboring of those defined pit bulls in

---

[1] A copy of the Ordinance as enacted, including the County's legislative findings, is attached as Exhibit 1. The Ordinance is codified as §§ 5-17–5-17.6 & 8CC-10 of the Miami-Dade County Code (the "County Code"). The County Code is available at https://library.municode.com/fl/miami_-_dade_county/codes/code_of_ordinances.

Miami-Dade County. (*Id.* at 5–6 (County Code § 5-17.6)).[2]

In its preamble, which the County Commission adopted by reference (*id.* at 3), the Ordinance made the following findings as to the dangers of pit bulls:

> [I]n recent months Dade County has experienced a tragic series of incidents in which citizens have been attacked and seriously injured by pit bull dogs; and . . .
>
> [C]oncurrent with these attacks upon human beings, the community has also experienced an increasing number of animal killings resulting from pit bull attacks; and . . .
>
> [P]it bull breeds were developed for the purpose of fighting dogs and other animals; and . . .
>
> [T]o increase its effectiveness as a fighter, certain pit bull traits have been selected and maximized by controlled breeding, including 1) a set of powerful jaws with an exceptional ability to grip, lock and tear when the dog bites; 2) a unique insensitivity to pain that causes pit bulls to be exceedingly tenacious in the attack; 3) an unusually aggressive temperament towards human beings and animals; and 4) an extraordinary directness in their method of attack that does not include the common warning signs such as barking or growling displayed by other breeds; . . .
>
> [F]or the above reasons, pit bull dogs present a danger to the health and welfare of the citizens of Dade County, different in degree and kind, from the dangers presented by other breeds of dog.

(*Id.* at 2).

Shortly after enactment, a dog-ownership association launched a pre-enforcement challenge against the Ordinance in *American Dog Owners Association, Inc. v. Dade County, Florida*, 728 F. Supp. 1533 (S.D. Fla. 1989). The plaintiffs in that case alleged that the Ordinance, on its face, violated due process because its definition of "pit bull dog" was too vague. *Id.* at 1534. Ultimately, Judge Hoeveler ruled that the Ordinance satisfied the requirements of due process and thus upheld the Ordinance as constitutional. *Id* at 1541–43. The Ordinance has remained in force, and materially unchanged, since 1989.[3]

---

[2] The Ordinance grandfathered in pit bulls already living in the County as of 90 days after the Ordinance went into effect, although those dogs were subject to various regulations.

[3] Later in 1989, the County amended the insurance requirements applicable to pit bulls that had been enacted prior to the Ordinance. *See* MDC Code §§ 5-17.3 & 5-17.6. And in 1999, § 5-17.7 was added, which required veterinary offices, kennels, and other animal business

## PROCEDURAL HISTORY

Plaintiffs' first complaint sought only declaratory and injunctive relief on the theory that the Ordinance violated Plaintiffs' substantive-due-process rights. (DE 1 Count 1). The County moved to dismiss, asserting that: (1) Plaintiff BFV lacked standing; (2) Plaintiffs' claims were time-barred; and (3) the claims failed as a matter of law because the Ordinance passed rational-basis review. (*See* DE 7). Instead of responding to the motion to dismiss, Plaintiffs filed the Amended Complaint, which corrected none of the deficiencies in the substantive-due-process claims but added new vagueness claims. (*See* DE 11 Counts 1 & 2).

As explained below, the Amended Complaint is even more flawed than its predecessor, and the only logical step forward in this case is dismissal.

## ARGUMENT

The Amended Complaint is, first and foremost, subject to dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) because Plaintiffs, who are associations proceeding on behalf of their members, do not satisfy the test for associational standing. Next, even if at least one of the Plaintiffs had standing to assert at least one of the Amended Complaint's claims, this case would still be subject to dismissal with prejudice for failure to state a claim under Rule 12(b)(6) because each of the claims either is improperly pleaded or fails as a matter of law. Moreover, this Court does not have the power to issue the injunction Plaintiffs seek.

**I.    The Court Has No Subject-Matter Jurisdiction Over The Amended Complaint Because Plaintiffs Do Not Satisfy The Test For Associational Standing.**

Because a federal court has no subject-matter jurisdiction over a claim as to which a plaintiff has no standing, standing is a threshold question in every federal suit. *See Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1220 (11th Cir. 2017). This case has two Plaintiffs, and, as the County reads the Amended Complaint, each Plaintiff asserts a facial and an as-applied substantive-due-process claim and a facial and an as-applied vagueness claim. "Standing is not dispensed in gross," and "a plaintiff must demonstrate standing for each claim he seeks to press." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citations omitted). Additionally, even if two plaintiffs raise the same issue (*e.g.*, substantive due process or vagueness), each plaintiff must establish his own standing if either (a) each plaintiff seeks a different form of relief or (b)

establishments to post notices of the pit-bull prohibition. None of these amendments is material to the issues in this case.

Page 4 of 22

claims that raise the same general issue are nevertheless predicated on distinct facts. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650–51 & n.3 (2017).

Each of the Coalition's and BFV's as-applied claims seeks a declaration that the Ordinance is unconstitutional as applied to that Plaintiff individually. Because the declaratory judgment requested for each claim would be tailored to each Plaintiff's unique circumstances, the Coalition's and BFV's claims—and the relief those claims seek—are distinct. Accordingly, the Coalition's and BFV's standing as to each claim asserted must be independently assessed. One Plaintiff cannot piggyback on the other's standing.

Furthermore, because Plaintiffs' claims seek to vindicate harm allegedly suffered by Plaintiffs' members—and not harm suffered by the Plaintiffs themselves—Plaintiffs rely on the doctrine of associational standing. This doctrine provides that "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adv. Comm'n*, 432 U.S. 333, 343 (1977). For the reasons explained below, Plaintiffs fail to satisfy the first and third prongs of the *Hunt* test, and therefore Plaintiffs have no standing.

### A. Plaintiffs' Members Would Not Have Standing To Sue In Their Own Right Because They Face No Threat Of Injury.

The first prong of the *Hunt* test is whether the association's "members would otherwise have standing to sue in their own right." To establish standing, an individual plaintiff must show: (1) injury in fact, (2) traceability, and (3) redressability. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (citation omitted).

Here, Plaintiffs seek only prospective relief in a pre-enforcement context. Accordingly, they must establish a "well-founded fear that comes with the risk of subjecting oneself to prosecution for engaging in allegedly protected activity." *GeorgiaCarry.org, Inc. v. Georgia*, 687 F.3d 1244, 1252 (11th Cir. 2012). A plaintiff who alleges "a risk of prosecution" must show "(1) that an actual threat of prosecution was made, (2) that prosecution is likely, or (3) that a credible threat of prosecution exists based on the circumstances." *Id.*

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

Plaintiffs do not allege any actual threat of prosecution, and so, Plaintiffs "must show that there is a realistic danger of sustaining direct injury as a result of the [Ordinance]'s operation or enforcement." *Id.* (citations omitted). This analysis turns on "whether the plaintiff is seriously interested in disobeying, and the defendant seriously intent on enforcing" the Ordinance. *Id.* (citations omitted).

      1.    *BFV's Members Face No "Realistic Danger" of Enforcement Because The County Does Not Enforce The Ordinance Against Service Animals.*

BFV alleges that it provides disabled veterans with service animals and that most of those service animals would be considered "pit bulls" under the Ordinance. (DE 11 ¶¶ 10–11). But the County in fact has a policy of not enforcing the Ordinance against service animals, as defined in 28 C.F.R. § 36.104. (*See* Ex. 2 ¶¶ 10–11).[4] Indeed, since 2007, numerous pit bull dogs have been registered as service dogs with the County's Animal Services Department, which requires all dogs to be licensed and registered. (*See id.* ¶¶ 5, 10). Furthermore, the Department has developed a process for recognizing service dogs when it responds to complaints from members of the public seeking enforcement against pit bulls. (*See id.* ¶¶ 13–15).[5]

BFV does not provide any factual allegations supporting its purely conclusory allegation that the County has a "policy of forcing Plaintiffs' members to surrender their companion and/or service animals" (DE 11 ¶ 26). Because the County in fact exempts service dogs from the Ordinance, BFV cannot show that its members face any "realistic danger" that the law will be enforced against them, as the Eleventh Circuit requires. *GeorgiaCarry.org*, 687 F.3d at 1252. Without that "realistic danger" of enforcement, BFV cannot establish that any of its members will suffer an injury-in-fact as a result of the Ordinance. BFV therefore lacks standing to assert any of its claims, and thus its claims must be dismissed.

---

[4] A motion to dismiss based on standing is an attack on the Court's subject-matter jurisdiction and, as such, can rely on materials extrinsic to the pleadings. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008).

[5] The County has previously attested to these policies and procedures in a case in this District involving pit bulls, *Felix Conde et al. v. Miami-Dade County*, No. 13-cv-24111-JAL, DE 11 at 4-5 (Def. Miami-Dade County's Answer and Defenses) & DE 11-5 (Gallagher Decl.) (S.D. Fla. Dec. 20, 2013). The declaration in that case is attached here as Exhibit 3.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

2.    Both Plaintiffs Fail To Allege A "Realistic Danger" of Enforcement With Respect To Their As-Applied Claims.

Beyond the fact that the County does not enforce the Ordinance against service-animal pit bulls, both Plaintiffs fail to plead a "realistic danger" of enforcement to establish standing to pursue as-applied claims. In *GeorgiaCarry.org*, the Eleventh Circuit acknowledged the significant burden a plaintiff must carry to bring an as-applied pre-enforcement challenge (such as Plaintiffs bring here). The Eleventh Circuit found it almost "an inherent contradiction" that plaintiffs could argue that a law, as applied to them, violated their rights, even though the law had not yet been applied to them. *See GeorgiaCarry.org*, 687 F.3d at 1255 n.20. But assuming "that somehow it is possible to bring an as-applied challenge in a pre-enforcement review of a statute that has yet to be applied," the Court found that "there are few situations where that type of challenge would prevail." *Id.* According to the Eleventh Circuit, "[s]uch a situation could arise when the factual context of the challenge is so clear and uncontroverted that there is no question as to how the statute will be applied." *Id.* But to show this is the case, "a plaintiff's complaint must include all of the factual allegations necessary to clearly illustrate the context in which the statute will be applied." *Id.*

This Court found plaintiffs in a similarly non-justiciable conundrum in *Doe v. Miami-Dade County*, No. 1:14-cv-23933-PCH, 2015 WL 3886841 (S.D. Fla. June 23, 2015) (Huck, J.), *aff'd in part, rev'd in part & remanded on other grounds*, 846 F.3d 1180 (11th Cir. 2017). The plaintiffs in that case asserted pre-enforcement as-applied vagueness claims against a County ordinance, but the Court relied on *GeorgiaCarry.org* to conclude that the plaintiffs' averments were utterly lacking in the detail necessary to assure the Court of a "realistic danger" that the County would enforce the ordinance against the plaintiffs. *See id.* at *6. It wasn't enough for this Court that the plaintiffs alleged past enforcement action. *See id.* at *6–7 & n.8. Also inadequate were the plaintiffs' contentions that County officials held inconsistent views on how to apply the ordinance and plaintiffs were unsure about how the ordinance would be applied. *See id.* at *7 & *8 n.14. This Court found the as-applied claims unripe. *See id.* at *8.

Plaintiffs here likewise fail to meet this demanding burden—consequently, their as-applied claims are not ripe, and they do not possess standing to assert the claims.[6] Plaintiffs

_____

[6] "[I]n cases involving pre-enforcement review, the standing and ripeness inquiries may tend to converge." *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006); *see also Doe*, 2015

refer generally to "the current and historical application of [the Ordinance]" and to "several documents" that purportedly show how the Ordinance has been enforced in the past. (DE 11 ¶¶ 42 & 43). But as in *Doe*, allegations of past enforcement against non-parties are irrelevant, and Plaintiffs otherwise offer nothing to assure this Court that there exists a "realistic danger" that the Ordinance will, in the future, be applied to any specific dog in any specific manner. The allegations here are actually even more deficient than those in *Doe*, because at least in that case, specific, individual human plaintiffs were identified and their stories told. Here, Plaintiffs do no more than refer generally to unnamed members who have pit bulls or mixed-breed dogs that could be designated as pit bulls. (*See id.* ¶¶ 9 & 11). Such an opaque portrait cannot provide "all of the factual allegations necessary to clearly illustrate the context in which the [Ordinance] will be applied." *GeorgiaCarry.org*, 687 F.3d at 1255 n.20.

This pleading failure is especially stark for Plaintiffs' vagueness claims. The essence of these as-applied claims is that the County has supposedly been enforcing the Ordinance in an arbitrary, unpredictable manner and that the County will, at some point in the future, enforce the Ordinance against Plaintiffs' members in an arbitrary and unpredictable way. But even if true, how could Plaintiffs possibly allege "all of the factual allegations necessary to clearly illustrate the context in which the [Ordinance] will be applied," *id.*, when Plaintiffs allege in the same breath that there's no way to foresee how the Ordinance will be applied to them because of the allegedly arbitrary and unpredictable manner it has been enforced? These as-applied vagueness claims are not justiciable. *See Doe*, 2015 WL 3886841, at *8 & n.14. With no subject-matter jurisdiction over these claims, the Court must dismiss them.

**B.    Plaintiffs Have No Standing To Assert As-Applied Claims Because The Claims Require Their Members' Individual Participation In This Suit.**

Plaintiffs' as-applied claims do not satisfy the third prong[7] of the *Hunt* test for association standing, which dictates that "neither the claim asserted nor the relief requested

---

WL 3886841, at *7 n.13. Regardless of whether the Court views Plaintiffs' as-applied claims from the vantage point of standing or ripeness, the claims are not justiciable.

[7] The third prong is a prudential limitation on standing, created by the courts, whereas the first and second prongs are constitutional limitations grounded in Article III. *See United Food & Comm. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 554–58 (1996). The third prong's prudential character, however, does "not . . . rob it of its value"; it simply means that, unlike a constitutional requirement, Congress can abrogate it. *Id.* at 556–58.

[can] require[] the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. In other words, the third prong's inquiry is whether the claim "requires individualized proof" or can instead be "resolved in a group context." *Id.* at 344. As the third prong's analysis suggests, associational standing "depends in substantial measure on the nature of the relief sought." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). Here, Plaintiffs' as-applied claims, which seek declaratory and injunctive relief,[8] cannot satisfy the third prong because they necessitate the individual participation of Plaintiffs' members.

The Eleventh Circuit confronted similarly non-justiciable claims in *Georgia Cemetery Association, Inc. v. Cox*, 353 F.3d 1319 (11th Cir. 2003). In that case, the district court dismissed an association's takings claim for lack of associational standing on the basis that the association brought an as-applied claim. *See id.* at 1322. To get out of this bind, the association asserted on appeal that its claim was actually facial, not as-applied, and that it sought only a declaratory judgment and an injunction. *See id.* But that change in the claim and the relief requested made no difference: the claim still required the Court to analyze the association's members' individual economic circumstances, and so the individualized, fact-specific nature of the claim defeated prong three of the *Hunt* test. *Id.*; *see also Greater Atlanta Home Builders Ass'n, Inc. v. City of Atlanta*, 149 F. App'x 846, 848–49 (11th Cir. 2005).

Other courts have reached similar results. Remarkably on point is *Rent Stabilization Association of the City of New York v. Dinkins*, 5 F.3d 591 (2d Cir. 1993), in which the Second Circuit ruled that associational plaintiffs failed to satisfy the third prong of the *Hunt* test for as-applied substantive-due-process and takings claims that sought prospective relief. Both claims asserted that New York City had been arbitrarily administering its rent-stabilization law in a manner that caused economic harm to landlords. *See id.* at 595–98. The court found that the claims required it to examine each individual instance the law was applied to a landlord to determine whether an application was arbitrary. *See id.* Each of these examinations in turn required an inquiry into each landlord's "individualized economic and financial data." *Id.* Because the as-applied claims necessitated individualized inquiries, the association's members

---

[8] Although the Supreme Court has stated that prospective relief, such as a declaratory judgment or an injunction, is often a suitable remedy for associational standing, whereas damages often are not, *see Warth*, 422 U.S. at 515–16, this is a generalization. There are indeed cases, such as the instant case, in which claims for prospective relief do not satisfy *Hunt*.

Page 9 of 22

would have been required to participate in the suit; this, however, negated the third prong of the *Hunt* test, and therefore the association had no standing to seek relief on behalf of its members. *Id.*; *see also Minor I Doe v. Sch. Bd. for Santa Rosa Cty.*, 264 F.R.D. 670, 687–88 (N.D. Fla. 2010); *Ass'n of Christian Schs. Int'l v. Stearns*, 678 F. Supp. 2d 980, 984–86 (C.D. Cal. 2008), *aff'd with helpful discussion*, 362 F. App'x 640, 644 (9th Cir. 2010).

Similar to the plaintiffs in *Rent Stabilization Association* and *Georgia Cemetery Association*, Plaintiffs here raise as-applied claims predicated on hypothetical enforcement actions involving Plaintiffs' unidentified members. These claims necessitate individualized inquiries into (1) the characteristics of the dog (or dogs) that each member has, (2) whether each dog will be classified by the County as a pit bull, and (3) whether such a classification amounts to a vague application of the Ordinance or an application that is so arbitrary or so excessive that it violates substantive due process. As a critical, integral part of these fact-intensive, individualized inquiries, the Court would have to assess each dog's specific characteristics against the lengthy list of factors that County officials use for pit-bull classification. The following list of factors is just a sample, but even this small list illustrates how fact-sensitive the Court's undertaking would be: whether the dog's head is brick-like in shape; how tightly or loosely the dog's upper teeth meet over the lower teeth; how wide open the dog's nostrils are; whether the dog's neck is slightly arched; whether the dog's gait is light and springy; how sloping the dog's shoulder blades are; and whether the dog's tail is undocked, or medium length, low set, tapering to a point, and carried rather low. (*See* Ex. 1 at 8–10).

Like the claims in *Rent Stabilization Association* and *Georgia Cemetery Association*, which required fact-intensive examinations of individuals' unique economic circumstances, Plaintiffs' claims here demand individualized proof to satisfy fact-intensive examinations of individuals' dogs' unique biological circumstances. Because these as-applied claims do not satisfy the third prong of the *Hunt* test, they must be dismissed.

## II.     The Amended Complaint Fails To State A Claim.

Even if Plaintiffs had standing, their claims should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Under the plausibility standard established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Amended Complaint's "allegations must . . . state a claim for relief that is plausible—and not merely possible—on its face." *Almanza v. United*

*Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017). "Under this standard, 'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Likewise, allegations made "only at the highest order of generality and without any factual development" fail to "push[] [a] claim 'across the line from conceivable to plausible.'" *Boyd v. Warden*, 856 F.3d 853, 871 n.2 (11th Cir. 2017) (quoting *Twombly*, 550 U.S. at 570).

As explained below, Plaintiffs' facial and as-applied claims are subject to dismissal with prejudice because they are improperly pleaded and fail as a matter of law. In addition, the face of the Amended Complaint reveals that the facial claims are time-barred. Finally, this Court cannot grant Plaintiffs' request for an injunction because the Court does not have the power to order the County to engage in the legislative activity of repealing the Ordinance.

**A.      The Vagueness Claims Fail To State A Claim.**

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense [(1)] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [(2)] in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). A vagueness challenge can be either facial or as-applied. "A facial challenge asserts that a law '*always* operates unconstitutionally.'" *Harris v. Mex. Spec. Foods*, 564 F.3d 1301, 1308 (11th Cir. 2009) (quoting Black's Law Dictionary 223 (7th ed. 1999)) (emphasis in original). Accordingly, "a facial challenge will succeed only if the statute could never be applied in a constitutional manner." *Id.* (citation omitted). "An as-applied challenge, by contrast, addresses whether 'a statute is unconstitutional on the facts of a particular case or to a particular party.'" *Id.* (quoting Black's Law Dictionary at 223).

It is unclear from Count 2 of the Amended Complaint whether Plaintiffs attempt to assert a facial claim, an as-applied claim, or both.[9] (*See* DE 11 Count 2). Paragraphs 38 through 41 focus on the text of the Ordinance, which suggests that the claims are facial, but paragraphs 42 through 45 focus on the "historical enforcement" of the Ordinance, thereby suggesting that

---

[9] To the extent Count 2 attempts to plead both claims within the same count and based on the same exact allegations, Count 2 is a shotgun pleading and should be dismissed for that reason alone. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). This Court is familiar with the complications that arise when facial and as-applied claims are not distinctly pleaded. *See Doe*, 2015 WL 3886841, at *2–3 & n.4.

the claims are as-applied. Indeed, Plaintiffs note that Judge Hoeveler, in ruling on the facial vagueness challenge to the Ordinance in 1989, "expressly reserved ruling on the application of the statute." (*Id.* ¶ 45). Yet, in paragraph 46, which avers that the text of the Ordinance is inherently contradictory, Plaintiffs shift their focus back to the Ordinance's text, only to refer in paragraph 47 once again to the alleged "history of inconsistent enforcement" of the Ordinance. Out of caution,[10] the County construes Count 2 as asserting both facial and as-applied vagueness claims, but either way, the claims fail.

1.    *The As-Applied Claims Are Improperly Pleaded.*

To the extent Plaintiffs attempt to bring as-applied vagueness claims, their attempts fall far short of the pleading standard. "Because [an as-applied] challenge asserts that a statute cannot be constitutionally applied in particular circumstances, it necessarily requires the development of a factual record," at least when a court's review is based on a factual record. *Harris*, 564 F.3d at 1308. By corollary, when a court's review is limited to the pleadings, an as-applied challenge must be supported by sufficient factual allegations. *See id.* And when an as-applied claim is asserted in a pre-enforcement context, as here, the allegations must describe how a law is threatened to be enforced under a specific set of facts.

Yet, the Amended Complaint asserts only general, conclusory allegations, with no reference to even a single situation in which the Ordinance will be vaguely applied. Plaintiffs conclusorily state that "the current and historical application of [the Ordinance] has resulted in arbitrary and discriminatory outcomes." (DE 11 ¶ 42). Plaintiffs then enigmatically refer to "several documents" that purportedly show: "internally inconsistent enforcement; unqualified and uncertified field officers making estimations of what percentage a dog conforms to the 'pit bull' characteristics that are later refuted by veterinarians; and patterns of contradictory outcomes among determinations whether a mixed-dog is a 'pit bull.'" (*Id.* ¶ 43).

Beyond the fact these allegations refer to past conduct, whereas Plaintiffs' pre-enforcement as-applied claims should be based on anticipated future conduct, the allegations are far too general to support as-applied claims: even accepting the allegations as true, the

---

[10] In an attempt to narrow the issues for resolution, undersigned counsel conferred with counsel for Plaintiffs, who stated that the claims in the Amended Complaint are as-applied. But Plaintiffs' counsel declined to amend the pleading to give it clarity, even though the County stated that it would be unopposed to a motion to amend.

Page 12 of 22

Court has no way to discern whether, under any particular circumstances relevant to any particular dog, the County will apply the Ordinance to a dog in a vague manner. Assuming Count 2 is based on an as-applied theory, the claims should therefore be dismissed.

2.   *The Facial Claims Fail As A Matter Of Law.*

Vagueness claims can also be facial, but Plaintiffs have likewise failed to state a cause of action for facial vagueness. Under the vagueness doctrine, even when a court adjudicates a facial challenge, a court nevertheless must "consider whether a statute is vague as applied to the particular facts at issue, for [a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (citation omitted). In other words, a plaintiff cannot state a facial vagueness claim without also pleading an as-applied vagueness claim. Because, as just discussed, Plaintiffs failed to plead as-applied claims, they failed to plead facial vagueness claims as well.

And yet, even if Plaintiffs could pursue facial vagueness claims, the claims would fail as a matter of law because the Ordinance, as written, is not unconstitutionally vague. Judge Hoeveler's ruling on this issue is as true today as it was in 1989. *See Am. Dog Owners Ass'n, Inc. v. Dade County*, 728 F. Supp. 1533, 1538–43 (S.D. Fla. 1989) (holding that the Ordinance was not facially vague because there were at least some constitutional applications of it); *see also Dias v. City & County of Denver*, 567 F.3d 1169, 1178–80 (10th Cir. 2009).

**B.   The Substantive-Due-Process Claims Fail To State A Claim.**

Substantive due process "protect[s] . . . the individual against arbitrary action of government," and in so doing, "limits what the government may do in both its legislative and its executive capacities." *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (citations omitted). Substantive-due-process analysis thus "depend[s] on whether it is legislation or a specific act of a governmental officer that is at issue." *Id.* at 846.

1.   *The As-Applied Claims Are Improperly Pleaded And Fail As A Matter Of Law.*

To the extent Plaintiffs assert as-applied substantive-due-process claims, Plaintiffs challenge the manner in which a County officer will apply the Ordinance to them. Yet, as with Plaintiffs' vagueness claims, Plaintiffs fail to plead with any specificity how the Ordinance will be applied to them in a manner that violates substantive due process. Plaintiffs merely aver, at a high level of generality, that the County violates substantive due process when it

confiscates or forcibly removes pit bulls "where there is no evidence that the animals posed a threat to public safety" or "where there is no evidence that the [pit bulls] posed a public nuisance or otherwise threatened public safety." (DE 11 ¶¶ 26–27). Allegations this conclusory cannot support an as-applied claim, and without any other supportive allegations, Plaintiffs fail to state as-applied substantive-due-process claims.

Further, even if Plaintiffs alleged how a County officer will apply the Ordinance against a particular dog, Plaintiffs would be challenging executive action. When a plaintiff challenges executive action as violating substantive due process, a plaintiff must plead conduct that is so arbitrary that it "shocks the conscience." *Waldman v. Conway*, 871 F.3d 1283, 1292 (11th Cir 2017). "Only the most egregious conduct is sufficiently arbitrary to constitute a substantive due process violation," *id.*, and nothing in the Amended Complaint suggests that Plaintiffs could come close to meeting this standard.[11]

  2. *The Facial Claims Fail As A Matter Of Law.*

To the extent Plaintiffs assert facial substantive-due-process claims, Plaintiffs challenge the face of the Ordinance itself. In so doing, Plaintiffs challenge legislative action. When legislative action is challenged on substantive-due-process grounds, the court must assess the legislation under rational-basis review unless a fundamental liberty is implicated. Here, no fundamental liberty is at stake, *see Am. Dog Owners Ass'n*, 728 F. Supp. at 1541, and indeed, Plaintiffs concede that rational basis is the applicable standard (*see* DE 11 ¶¶ 20, 24).

The facial substantive-due-process claims fail on the pleadings because the Ordinance easily satisfies rational-basis review. The Amended Complaint alleges that Judge Hoeveler's 1989 ruling on the constitutionality of the Ordinance relied upon the "then-existing body of knowledge regarding pit bulls." (*Id.* ¶ 19). Plaintiffs further allege that the "state of science" has since changed so that "the breed specific prohibition enacted by [the County] . . . is not rationally based to serve a legitimate governmental purpose." (*Id.* ¶¶ 20, 24). As their sole factual support for this alleged change, Plaintiffs state that the UKC and AKC have changed their breed descriptions for pit bulls to describe them as "friendly" and to opine that aggression

---

[11] Even if, contrary to Eleventh Circuit precedent, this as-applied claim were analyzed under the rational-basis standard instead of the "shocks the conscience" standard, similar to what the Tenth Circuit did in *Dias*, 567 F.3d at 1182, Plaintiffs' allegations would be too conclusory to state a claim.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

is "uncharacteristic" of the breeds. (*Id.* ¶¶ 21–23).

These allegations imply that a long-standing law loses its constitutionality unless it is continually supported by a particular plaintiff's view of current science, and that this particular Ordinance must mesh with any changes to the AKC's and UKC's breed descriptions. But contrary to Plaintiffs' implications, the only test that the Ordinance must pass is the rational-basis test—"a highly deferential standard" under which a law will be upheld "so long as it bears a rational relation to some legitimate end." *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001) (citation omitted). Because it "proscribes only the very outer limits of a legislature's power," *id.*, the test asks two simple questions: "(1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it," *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009).

The Ordinance satisfies the first prong of the test because the County has a legitimate interest in protecting the health and safety of its residents by regulating animals. *See Nicchia v. New York*, 254 U.S. 228, 230 (1920); *State v. Peters*, 534 So. 2d 760, 765 (Fla. 3d DCA 1988). Indeed, the County invoked this legitimate interest in passing the Ordinance, finding that "pit bull dogs present a danger to the health and welfare of the citizens of Dade County" and that the Ordinance will "secure for the citizens of th[e] County the protection of their health, safety and welfare." (Ex. 1 at 2–3).

The Ordinance also passes prong two because the ban on pit bulls is rationally related to the County's interest in protecting the health and safety of its residents. A rational relationship exists as long as "any reasonably conceivable state of facts" justifies the Ordinance. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Here, the County expressly found such a "reasonably conceivable state of facts" when it passed the Ordinance. The Ordinance states that there have been a number of tragic pit bull attacks on people and animals, that pit bulls are associated with dog fighting, and that pit bulls have physical and behavioral traits that make their attacks more dangerous than other dog breeds' attacks. (*See* Ex. 1 at 2). A pit-bull ban such as the Ordinance is designed to remove pit bulls from the County; in so doing, the ban eradicates the foregoing health and safety problems posed by pit bulls. Because the ban rationally addresses problems that are within the County's power to address, the Ordinance has a rational basis. When it comes to rational-basis review, the analysis

in most cases really is that simple. *See Cash Inn of Dade, Inc. v. Metro. Dade County*, 938 F.2d 1239, 1241 (11th Cir. 1991) (the rational-basis test "is generally easily met").

Plaintiffs ignore this common-sense analysis, fixating instead on the opinions of dog-breeding organizations and supposed changes in "science," which they define entirely as those breeding organizations' opinions. But a legislative action comes to the Court "bearing a strong presumption of validity," and a plaintiff has the burden to negate "*every conceivable basis* which might support it." *Beach Commc'ns*, 508 U.S. at 314–15 (emphasis added; citation omitted). Plaintiffs do not attack all of the bases enumerated in the Ordinance, much less "every conceivable basis," as is their burden. Plaintiffs do not deny that pit bulls have attacked, seriously injured, and even killed humans and animals. Plaintiffs do not deny that pit bulls were bred to be fighting dogs or that pit bulls' physical and behavioral characteristics make them more dangerous than other breeds.[12] Instead, Plaintiffs merely espouse a different view of pit bulls, averring that not all pit bulls are as bad as they're made out to be. But Plaintiffs' view of the ideal pit bull with the ideal family cannot substitute for the legislature's rational concern about how less-than-ideal pit bulls behave in less-than-ideal situations or with less-than-noble owners. In other words, Plaintiffs' different point of view does not negate the tragic problems that pit bulls have caused in the County, nor does it negate the rational proposition that the problems created by some pit bulls can be solved by banning all pit bulls.

Plaintiffs have other opinions on how to deal with the problems posed by pit bulls, and their preferred methods might even be more effective than an outright ban. But the existence of more efficient methods to address a societal ill is constitutionally immaterial to rational-basis review: as long as the Ordinance is rational, the Court cannot judge it by how narrowly tailored it is or how directly its means advance the interests it pursues. Consequently, whether Plaintiffs believe that the County "was unwise in not choosing a means more precisely related

---

[12] It's hard to see how Plaintiffs could in good faith allege that pit bulls no longer attack humans or that they no longer exhibit exceeding tenacity and power if they do attack, considering just a few months ago two pit bulls killed their own owner, *Virginia Woman Killed In 'Grisly Mauling' By Her Dogs, Cops Say*, FoxNews.com (Dec. 16, 2017) http://www.foxnews.com/us/2017/12/16/virginia-woman-killed-in-grisly-mauling-by-her-dogs-cops-says.html, and earlier last year, a pit bull that had been in a family for nine years mauled the family's six-month-old baby to death, *Nevada Pit Bull Mauls 6-Month-Old Baby To Death*, FoxNews.com (May 11, 2017), http://www.foxnews.com/us/2017/05/11/pit-bull-mauls-6-month-old-baby-to-death-in-nevada.html.

to its primary purpose is irrelevant." *Vance v. Bradley*, 440 U.S. 93, 109 (1979); *see also Heller v. Doe*, 509 U.S. 312, 321 (1993) ("[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends."); *Cash Inn of Dade*, 938 F.2d at 1241 ("Even if the court is convinced that the political branch has made an improvident, ill-advised, or unnecessary decision, it must uphold the act if it bears a rational relation to a legitimate governmental purpose.").

The Ordinance is rational on its face. And as one might expect, this facial challenge raises no issues of fact, so there is no need for discovery or fact-finding. *See Beach Commc'ns*, 508 U.S. at 315 ("a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data"); *Heller*, 509 U.S. at 320 (the government has "no obligation to produce evidence to sustain the rationality of a statutory classification"). The facial substantive-due-process claims fail on the pleadings as a matter of law, and therefore the Court should dismiss them with prejudice.[13]

### C.   Plaintiffs' Facial Claims Are Time-Barred.

Plaintiffs' facial challenges to the almost-30-year-old Ordinance are barred by the applicable statute of limitations. Because a § 1983 claim is governed by the forum state's residual personal-injury statute of limitations, and because, under Florida law, that limitations period is four years, *see* Fla. Stat. § 95.11(3)(p), a plaintiff must file a § 1983 claim arising in Florida within four years of the claim's accrual. *See Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003); Fla. Stat. § 95.031 (the limitations period for a claim "runs from the time the cause of action accrues"). A § 1983 claim accrues when "the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." *Chappell*, 340 F.3d at 1283.

The statute of limitations for a facial challenge to a law accrues at the time of enactment. *See Hillcrest Prop., LLC v. Pasco County*, 754 F.3d 1279, 1283 (11th Cir. 2014) (facial substantive-due-process claim challenging land-use law accrued when law was enacted); *Dibbs v. Hillsborough County*, 67 F. Supp. 3d 1340, 1348 (M.D. Fla. 2014). The

---

[13] In ruling this way, the Court would join other courts across the country that have found that pit-bull bans pass rational-basis review. *See Am. Canine Found. v. City of Aurora*, 618 F. Supp. 2d 1271, 1278–79 (D. Colo. 2009); *Bess v. Bracken County Fiscal Court*, 210 S.W.3d 177, 182 (Ky. Ct. App. 2006); *Singer v. City of Cincinnati*, 566 N.E.2d 190, 192 (Ohio Ct. App. 1990); *Garcia v. Vill. of Tijeras*, 767 P.2d 355, 358 (N.M. Ct. App. 1988).

reason for such a rule is that the "grounds for such challenges will usually be apparent to any interested citizen" within the limitations period following enactment, and the "government's interest in finality outweighs a late-comer's desire to protest the agency's action as a matter of policy or procedure." *Fla. Keys Citizens Coal. v. West*, 996 F. Supp. 1254, 1256 (S.D. Fla. 1998) (quoting *Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991)).

That is exactly the situation here. The Ordinance was enacted in 1989. The appropriate time to challenge the Ordinance would have been within four years of its enactment. A timely challenge was in fact brought, and rejected, within the limitations period. *See Am. Dog Owners Ass'n*, 728 F. Supp. 1533. But the limitations period has now long since expired.

Plaintiffs attempt to resurrect their patently stale claim by pointing to the AKC's and UKC's changing their breed descriptions to characterize pit bulls as non-aggressive. (DE 11 ¶¶ 20–23). That attempt fails as a matter of law. First, those changes—which relate to private standards maintained by third parties and not to a regulation adopted by the government—are irrelevant to the limitations period to facially attack the regulation. The Ordinance's specific descriptions of the dogs that are subject to the prohibition were based on the AKC and UKC standards in existence at the time, but the Ordinance did not make those standards self-amending based on changes by the AKC and UKC. (*See* Ex. 1 at 3–4, 8–10). Moreover, temperament was not one of the adopted standards: the Ordinance only identified subject dogs by physical standards, such as "Head and Skull," "Mouth," "Body," and "Size-Weight." (*Id.* at 10). The Ordinance has thus not been amended in any material way since it was first adopted.

Second, even if the kennel clubs' changes were relevant to the limitations period, this action would still be time-barred. Plaintiffs concede that the UKC standards for the Staffordshire Bull Terrier were revised in 2007 (*id.* ¶ 22), placing that challenge well outside the limitations period even by Plaintiffs' more generous view. And while Plaintiffs allege that the UKC standards for American Pit Bull Terriers and AKC standards for American Staffordshire Terriers were revised in 2017 (*id.* ¶¶ 21 & 23), those standards have actually been in place for almost ten years, and possibly longer, given that the plaintiffs in the 2009 case *Dias* had alleged that the very same clubs described the dogs as "friendly" and that aggression was "uncharacteristic of the breed." 567 F.3d at 1183–84. The 2009 description is virtually identical to the purported new "science" that Plaintiffs rely on here to allege that the descriptions were "revised" in 2017. (DE 11 ¶¶ 20–24). Plaintiffs' "evidence" of a "change in

the science" was thus available prior to 2009—over eight years ago. Even under their self-created standards, Plaintiffs' claims are time-barred.

A facial constitutional challenge to a well-settled, decades-old law, where the law has not changed materially in the intervening years, cannot be premised on Plaintiffs' mere disagreement with the wisdom of the law. Allowing an action such as this one to proceed would make a mockery of the statute of limitations. It would permit plaintiffs to perpetually challenge duly enacted statutes simply because an interest group had revised its opinions on the subject matter, or a new article on the topic was published, or a purported expert developed an opinion that differed from that of the elected legislators. Permitting this lawsuit to proceed would open the floodgates to legislation by litigation: this Court would be inundated by interest groups, having been unsuccessful at convincing legislatures of the wisdom of their preferred policies, seeking to have the courts overturn long-standing, unchanged laws. Plaintiffs' facial claims are 24 years too late, and this Court should dismiss them with prejudice.

**D.      The Court Has No Power To Grant Plaintiffs' Request For An Injunction.**

Plaintiffs ask the Court to issue an injunction ordering the County to engage in the legislative act of repealing the Ordinance. (DE 11 Wherefore Cl. (b) & (f)). Such an injunction is not within the Court's power to grant, and therefore Plaintiffs fail to state a claim upon which relief can be granted to the extent that Plaintiffs seek an injunction.

The federalist structure of the U.S. Constitution prohibits Congress from directing state legislatures to engage in legislative activity. *See New York v. United States*, 505 U.S. 144 (1992). And just as our federal legislature cannot require a state legislature to legislate, federal courts have no power to compel a state legislature's legislative activity. *See* Status of D.C. Min. Wage Law, 39 Op. Att'y Gen. 22, 22–23 (1937) ("The decisions are practically in accord in holding that the courts have no power to repeal or abolish a statute, and that notwithstanding a decision holding it unconstitutional a statute continues to remain on the statute books"); *Jawish v. Morlet*, 86 A.2d 96, 97 (D.C. 1952).

This is as much a matter of federalism as it is a matter of the principle of limited government powers. *See Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991) ("The Constitution created a Federal Government of limited powers."). It is beyond peradventure that federal courts cannot legislate. *See Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1255 (11th Cir. 2002) ("Our function is to apply statutes, to carry out the expression of the legislative will that

is embodied in them, not to 'improve' statutes by altering them."). Federal courts can, of course, declare a statute unconstitutional facially or as applied, and federal courts can also enjoin state officials from enforcing an unconstitutional statute. *See New York*, 505 U.S. at 179. But federal courts cannot write, rewrite, or repeal legislation, and the Constitution is equally repugnant to any end-run around that limitation, such as the issuance of an injunction ordering a state's legislative body to repeal a statute.

The County is a sub-division of the State of Florida, and its legislative powers at issue here are no less protected from federal incursion than are the State's. *See Hollywood, Inc. v. Broward County*, 431 So. 2d 606, 609 (Fla. 4th DCA 1983). Accordingly, while this Court has the power to pronounce on the Ordinance's constitutionality, the Court cannot commandeer the County by ordering the Board of County Commissioners to repeal the Ordinance. Because the Court has no power to grant the injunctive relief that Plaintiffs seek, that request for relief should be dismissed with prejudice.

## CONCLUSION

They say that every dog has his day, but Plaintiffs aren't dogs—they're associations, and to have their day in court, they need to establish associational standing and plead claims upon which relief can be granted. Plaintiffs have failed to do both, and the defects these failures create are incurable. Plaintiffs can address their grievances through the political process, but their attempt to package those grievances into federal constitutional claims falls far short of creating a justiciable and cognizable judicial dispute. The Court should therefore dismiss this case for lack of subject-matter jurisdiction or, in the alternative, dismiss the case with prejudice for failure to state a claim.

CASE NO. 17-cv-23716-PCH

Dated: February 1, 2018            Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By: /s/ Christopher J. Wahl
  Christopher J. Wahl
  Sabrina Levin
  Dennis A. Kerbel
  Assistant County Attorneys
  Florida Bar Nos. 122453, 27536 & 610429
  Telephone: (305) 375-5151
  Facsimile: (305) 375-5634
  E-mail:  wahl@miamidade.gov
             levin@miamidade.gov
             dkerbel@miamidade.gov
             olga1@miamidade.gov
  Attorneys for Defendant

CASE NO. 17-cv-23716-PCH

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 1, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties of record via CM/ECF.

/s/ Christopher J. Wahl
Assistant County Attorney

## SERVICE LIST

*Miami Coalition Against Breed Specific Legislation Inc. et al. v. Miami-Dade County*,
CASE NO. 17-cv-23716-PCH

Ryan H. Lehrer, Esq.
Tripp Scott, P.A.
110 SE 6th Street, 15th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-7500
Facsimilie: (954) 761-8475
E-mail: eservice@trippscott.com
rhl@trippscott.com
sxc@trippscott.com
*Counsel for Plaintiffs*

***Served via Notice of Electronic Filing***

Christopher J. Wahl
Sabrina Levin
Dennis A. Kerbel
Assistant County Attorneys
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151
Facsimile: (305) 375-5634
E-mail: wahl@miamidade.gov
slevin@miamidade.gov
dkerbel@miamidade.gov
olga1@miamidade.gov
*Counsel for Defendant*

***Served via Notice of Electronic Filing***

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151